## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DIMENSIONS HEALTH CORPORATION    :
                                 :
v.                               :    Civil Action WMN-05-3148
                                 :
SERVICE EMPLOYEES INTERNATIONAL  :
UNION, LOCAL UNION               :
1998/PROFESSIONAL STAFF NURSES   :
ASSOCIATION                      :
                                 :


### MEMORANDUM

Before the Court is a motion to dismiss, or in the alternative, for summary judgment filed by Defendant Service Employees International Union, Local Union 1998/Professional Staff Nurses Association (the Union).  Paper No. 4.  Plaintiff Dimensions Health Corporation (Dimensions) has also filed a cross motion for summary judgment.  Paper No. 6.  Both motions are ripe for decision.  Upon a review of the pleadings and applicable case law, this Court determines that no hearing is necessary (Local Rule 105.6) and that the arbitrator's award against Dimensions should be vacated.

### I.  BACKGROUND

Dimensions operates four health care facilities in Maryland.[1]  The Union represents nurses at all four of Dimensions facilities for purposes of collective bargaining.  Compl. ¶ 2.

---

[1] The four facilities are: Prince George's Hospital Center, Laurel Regional Hospital, Bowie Health Center, and Gladys Spellman Specialty Hospital and Nursing Center.  Compl. ¶ 1.

Dimensions and the Union have a Collective Bargaining Agreement (CBA) for the term May 1, 2002, through April 30, 2005.  Id. ¶ 4.

Facing staffing shortages Dimensions offered a $10.00 per hour bonus incentive to nurses who volunteered to work over the three day extended New Year's holiday – 7:30 a.m. on December 31, 2003, to 7:30 a.m. on January 3, 2004.  Id. ¶ 7.  A memorandum was sent to all four of Dimensions' hospitals outlining the incentive program and the incentive was made available in five units in Prince George's Hospital Center and two units in Laurel Regional Hospital.  Def.'s Mem. Ex. 3.

On January 5, 2005, the Union filed a grievance concerning the incentive.  Compl. ¶ 8.  Pursuant to the CBA, which provided for the resolution of disputes through arbitration, the grievance went to arbitration.  During the arbitration Dimensions argued that a side letter of agreement to the CBA, Attachment N, gave it the right to implement the bonus program in response to the staffing problem it faced.  May 20, 2005, Arbitration Tr. 19. Attachment N gives Dimensions the authority to "develop Special Pay Programs to address abnormally high vacancy rates . . . ." and leaves it to the Dimension's discretion to implement such programs.  Def.'s Mem. Ex. 2.  The side letter lists six triggers that may allow for the implementation of a Special Pay Program, stating that "[t]hese triggers are examples and not sole determining factors for implementing" the programs.  Id.  The

arbitrator found that Attachment N was not negotiated to cover
the New Year's 2004 staffing shortage.  Compl. Ex. 2 at 10.
Based on testimony of Union officials, he reasoned that
Attachment N was negotiated to cover recruitment and retention
issues.  He also reasoned that, because the parties were
discussing strategies to cope with holiday staffing shortages
during the time Attachment N was negotiated, if the parties
intended to use Attachment N to handle such situations, they
would have included it in the list of triggers.

The arbitrator found that Dimensions violated the CBA by
creating the special incentive bonus.  Compl. Ex. 2 at 11.  The
arbitrator ordered Dimensions to cease and desist from
implementing such special pay incentives in the future.  Id. at
12.  He also ordered Dimensions to pay the $10.00 per hour bonus
to all members of the bargaining unit who worked during the New
Year's 2004 holiday period but did not receive the bonus.[2]  Id.

On November 22, 2005, Dimensions filed suit in this Court
asking the Court to vacate the arbitrator's award on the basis
that the decision and remedial order exceeded his authority.
Compl. ¶¶ 11-12.

---

[2] Under the arbitrator's award eligible nurses at all four
facilities will receive the $10.00 per hour special incentive
bonus for their hours worked during the New Year's 2004 holiday,
even though the incentive was only made available in five units
in two of the hospitals.

## II.  DISCUSSION

### A.  The Arbitration Decision

An arbitrators findings should not be overturned absent fraud by the parties or dishonesty by the arbitrator. Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

In the present case, the CBA states that, "[t]he arbitrator shall confine her/his decision to the specific provision or provisions of this Agreement that have been allegedly violated. She/he shall have no authority to add to, subtract from or change any provision of this agreement."  Def.'s Mem. Ex. 1, CBA at 58.

Dimensions argues that the arbitrator exceeded his authority by imposing limits on the use of special pay incentives that are not contained in the text of Attachment N.  Compl. ¶ 11. Specifically, Dimensions argues that the arbitrator relied on the bargaining history without finding the provision at issue to be ambiguous and, as a result, his interpretation of Attachment N contradicted the unambiguous language of the provision, which states, "[t]hese triggers are examples and are not sole

determining factors for implementing Special Pay Programs."  The
Court does not agree.  The arbitrator acted within the scope of
his authority and confined his decision to whether Attachment N
applied; he found that it did not.  Under the arbitrator's
decision, the language of Attachment N stating that the list of
triggers is not exhaustive can still have meaning and the
arbitrator did not as Dimensions argues, "convert a list of
examples into an exclusive list."  Pl.'s Reply 2.  The
arbitrator's finding that the New Year's staffing shortage was
not a trigger that allows for the implementation of a special pay
program does not eliminate the possibility that other triggers
not mentioned on the list may justify the implementation of a
Special Pay Program.[3]

Dimensions also argues that the arbitrator exceeded his
authority by ignoring a "key sentence" of Attachment N – "Special
Programs may be initiated <u>at the discretion</u> of [Dimensions],
subject to notification and discussion with the Association
Leadership."  (emphasis added by Dimensions).  Again the Court
disagrees.  Because the arbitrator found that the New Year's
staffing shortage was not a requisite trigger to allow for the
implementation of a Special Pay Program, Attachment N did not

---

[3]  Dimensions is essentially arguing that the arbitrator's
decision was incorrect and the Court, if it agreed, would have no
authority to overturn such a decision.  <u>See</u> <u>Misco, Inc.</u>, 484 U.S.
at 38.

apply.   Therefore, Dimensions had no discretion to implement such
an incentive program and the "key sentence" is irrelevant.

   B.   The Arbitration Award

   "[A]rbitration awards may be overturned if the award
violates well-settled and prevailing public policy, fails to draw
its essence from the collective bargaining agreement or reflects
the arbitrator's own notions of right and wrong."   Mountaineer
Gas Co., 76 F.3d at 608.   "In the absence of any provision for
punitive awards, and of any substantiating proof of willful or
wanton conduct, an arbitrator may not make an award of punitive
damages for breach of a collective bargaining agreement."
Baltimore Regional Joint Board v. Webster Clothes, Inc., 596 F.2d
95, 98 (4th Cir. 1979).   The CBA in the present case does not
address the types of remedies an arbitrator may impose and the
arbitrator found that "there was no showing that [Dimensions]
intentionally violated the provisions of Attachment N by
implementing the special incentive bonus."   Compl. Ex. 2 at 11.
Thus in order to stand, the remedy in the present case must be
compensatory.

   The Fourth Circuit has repeatedly held that compensatory
damages can be awarded only when a breach of the bargaining
agreement causes a legally cognizable loss.   See, e.g.,
Westinghouse Electric Corp. v. Int'l Brotherhood of Electrical
Workers, 561 F.2d 521, 523 (4th Cir. 1977).   In Westinghouse, the

Fourth Circuit affirmed this Court's decision to set aside an arbitrator's award based on the finding that the breach of the bargaining agreement did not cause a monetary loss.  <u>Id.</u>  The Court upheld the arbitrator's finding that the company breached the CBA by allowing insufficient time for negotiations concerning a vacation shutdown for Christmas week of 1975.  <u>Id.</u>  The Court found that the arbitrator's award of three additional paid vacation days to each employee was impermissibly punitive as the union failed to prove that the employees suffered any monetary loss.  <u>Id.</u> at 523-24.

In the present case, the Union argues that <u>Westinghouse</u> is distinguishable because in that case "the Fourth Circuit merely established that damages awarded solely to punish an employer for a breach of contract are impermissible where the employees suffered no legally cognizable injury."  Def.'s Reply 7.  Whereas, the Union reasons that in the present case the arbitrator awarded damages to make whole "the nurses who had performed the same work at the same time but were paid less."  <u>Id.</u>  This Court, however, disagrees with the assertion that the nurses who were not paid the bonus suffered a loss.  The nurses who were scheduled to work were paid at their usual rates and, just as in <u>Westinghouse</u>, there is no evidence that they suffered any monetary loss, inconvenience or hardship.  As such, they

should not have been awarded compensation.[4]

In Webster Clothes, the Fourth Circuit again affirmed the district court's holding that the arbitrator had gone beyond the terms of the agreement in awarding damages when there had been no showing of actual damages.[5]  596 F.2d at 98.  Webster had breached the bargaining agreement by contracting with other companies for the manufacture of clothing without Union consent. Id. at 97.  Webster's Westminster plant was operating at full capacity at the time the work was outsourced.  The garments could not have been made at Westminster at a later time because they were fall garments that had to be in stores by a specific date. The arbitrator awarded $80,000 as an estimated payroll loss to be distributed to Webster's employees.  Id. at 97-98.  Because the

_____

[4]  The Union argues that the arbitrator's award draws its essence from the CBA in that "the award is consistent with the principles of equity established in the CBA and specifically applied to holiday pay."  Mem. 19.  In particular, the Union points to the CBA's provisions for fixed pay rates based on seniority and specifications of holiday rates that apply equally to all nurses.  Id.  The Union also points to Attachment N's listing as an example of a Special Pay Program a competitive bonus to be paid both to new hires and to current employees as an example of the CBA's focus on equity.  Id. 19-20.  This argument fails because the arbitrator's award does not draw its essence from a bargaining agreement that does not contemplate punitive awards.  See Webster Clothes, 596 F.2d at 98.

[5] The Union repeatedly cites to United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593 (1960), for the proposition that arbitrators have broad authority in fashioning a remedy.  Mem. 19; Def.'s Reply 6.  The Fourth Circuit in Webster Clothes specifically noted that Enterprise Wheel does not authorize an award where the party has not suffered some legally cognizable loss.  596 F.2d at 98.

court found that Webster's employees suffered no loss, the award was vacated.

This Court also vacated an arbitrator's award as punitive in Safeway Stores, Inc. v. Int'l Assoc. of Machinists and Aerospace Workers. 534 F. Supp. 638 (D. Md. 1982). In Safeway, the employer had violated the bargaining agreement by outsourcing work. The arbitrator's award compensated employees as they would have been compensated had they done the work. The Court found that there was no evidence of any cognizable loss to the employees, because during the time the work was outsourced the employees were working 40-hour weeks and had the normal opportunities to work overtime available. Id. at 640-41.

In the present case, the Union argues that Webster and Safeway Stores are distinguishable because, in those cases, "the members of the bargaining unit who benefitted from the arbitrator's award could not have done the work in question." Def.'s Reply 8. The Union reasons that in the present case the nurses could have and were doing the same work as those paid the bonuses. Id. Regardless, the nurses who did not receive the bonuses did receive their proper wages as set forth under the CBA and did not suffer a loss[6] just as the employees in Webster and

_____

[6] The Second Circuit specifically found that employees paid in accordance with the bargaining agreement suffer no monetary loss as a result of unlawful payments to another employee. Leed Architectural Products, Inc. v. United Steelworkers of America, 916 F.2d 63, 66 (2d Cir. 1990). Pursuant to the bargaining

<u>Safeway</u> did not suffer a loss.

**IV.  CONCLUSION**

For the foregoing reasons, the arbitrator's award against Dimensions should be vacated.[7]  A separate order consistent with this memorandum will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


Dated: April 19, 2006.

---

agreement in <u>Leed</u>, Fabricator A employees would earn between $8.27 and $8.58 per hour.  <u>Id.</u> at 64.  The company breached the agreement by paying an employee $10.00 an hour.  <u>Id.</u>  The arbitrator's award compensated the four employee grievants at the $10.00 an hour wage.  <u>Id.</u> at 66.  The court vacated this award because the increase in wage violated the bargaining agreement. Similar to the present case, the nurses who were paid their lawful wages did not suffer a monetary loss and paying them the bonus would violate the bargaining agreement.  Just as Dimensions had no authority under Attachment N to implement the incentive program, it would have had no authority under Attachment N to offer incentives to all nurses working the New Year's shift.

[7] The Union requests an award of attorney's fees.  Had the Court found that Dimensions' position was unjustified, the request would have been dismissed as untimely.  Under Local Rule 109.2, the request should not have been made until after entry of judgment.